IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**PATRICIA SYLING,**

    **Plaintiff,**

v.                                               Case No. 4:17cv196-MW/CAS

**TAWANDA THOMAS and
ELIZABETH BOYD,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

On July 27, 2017, Plaintiff, a federal prisoner proceeding pro se, filed a Second Amended Complaint against Case Manager Tawanda Thomas and Drug Treatment Specialist Elizabeth Boyd pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). ECF No. 10. Defendants filed a motion to dismiss on December 26, 2017. ECF No. 27. Plaintiff filed a response on March 14, 2018. ECF No. 32.

## Second Amended Complaint

Plaintiff names Tawanda Thomas, identified as Case Manager F Unit at FCI-Tallahassee (Federal Correctional Institution), and Elizabeth Boyd, identified as Drug Treatment Specialist at FCI-Tallahassee, as Defendants in the Second Amended Complaint. Plaintiff brings the suit against each

Defendant in both her individual and official capacities.  ECF No. 10 at 2-3.  She alleges that Defendant Thomas violated Plaintiff's First Amendment rights by retaliating against her for filing an administrative remedy against Thomas.  ECF No. 10 at 11.  Plaintiff claims that Defendant Boyd and Thomas violated Plaintiff's First Amendment rights by holding discussions with another inmate about Plaintiff's grievances.  *Id.*  Plaintiff claims her constitutional right to Equal Protection was violated because she and other white inmates were threatened with discipline for actions for which similarly situated black inmates were not threatened.  ECF No. 10 at 12.  Plaintiff seeks "actual" and "punitive" monetary damages from each Defendant.  ECF No. 10 at 13 (VI. Relief Requested).

     Pertinent to Plaintiff's claim of retaliation, Plaintiff alleges that on April 7, 2017, Defendant Thomas provided her with a future Residential Reentry Center (RRC) placement for six-months at a halfway house, to which Plaintiff objected, in pertinent part, because of the short length of time in the residence, her lack of family support, and lack of a release address.  ECF No. 10 at 5 (¶ 1).  Plaintiff alleged Thomas responded that Residential Drug Abuse Treatment Program (RDAP) participants such as Plaintiff receive no more than six months RRC placement because they already receive the year off, and that a homeless classification provides inmates

with less time "because we know you're going to violate and come back." *Id. (*¶ 2). Plaintiff alleged that she requested individual assessment by Thomas, who did not provide it. *Id.* (¶ 1). Plaintiff alleged that on April 9, 2017, she began to dispute Thomas's statements as contrary to the policies of the Bureau of Prisons (BOP), and that she made a plan of action to file a grievance, and for an attorney friend to contact the BOP Central Office with Plaintiff's concerns. *Id.* (¶ 3).

Plaintiff alleged that she notified the Warden of her concern with this issue on April 10, 2017, by email and that on April 11, 2017, she filed a BP-8½ informal resolution form complaining about Thomas. *Id.* (¶ 4-5). Neither a copy of the BP-8½ form nor a receipt for it was attached to the Second Amended Complaint.

Plaintiff alleges that on that same date—April 10, 2017—she was placed on commissary restriction, limiting her purchases to no more than $25 and to hygiene purchases only. *Id.* (¶ 6). Plaintiff claimed that her First Amendment rights were violated when Thomas "participated, instructed and placed a commissary restriction on Plaintiff immediately after filing a prison grievance." ECF No. 10 at 13 (V. Statement of Claims).

Plaintiff further alleged that she had not received an incident report when she was placed on commissary restriction and that she could not get

an explanation of the restriction from any staff member.  ECF No. 10 at 6 (¶ 7).  She alleged that on April 13, 2017, she submitted a BP-9 formal Request for Administrative Remedy to a counselor, who had the restriction quickly lifted, explaining only that "accidents happen."  *Id.*  Neither a copy of the BP-9 form nor a receipt for it were attached to the Second Amended Complaint.[1]

Plaintiff alleged that on April 19, 2017, an inmate named Cannon came to her and advised that Thomas wanted to speak to her regarding her write up and the issue of retaliation.  *Id.*  Plaintiff alleged that sending Cannon to summon Plaintiff was "inappropriate and a form of manipulation."  ECF No. 10 at 7 (¶ 8).

As to Defendant Boyd, Plaintiff alleged that Boyd threatened to place inmate McClemore in the Special Housing Unit (SHU) after witnessing an argument between inmate Cannon and inmate Jones, which Plaintiff also witnessed and had reported on April 20, 2017, in an RDAP accountability "pull-up" report.  ECF No. 10 at 8 (¶¶ 13-16).  Plaintiff further alleged that on April 20, 2017, Boyd called inmates McClemore, Cannon, and McGriff into her office and demanded to know about the argument they witnessed.

---

[1] Plaintiff does not state what specific complaint was identified in the BP-9.  Her allegation, in the context in which it is stated, implies a BP-9 was filed complaining about the imposition of a commissary restriction.

ECF No. 10 at 8 (¶ 16).  Plaintiff alleged that Boyd threatened McClemore with SHU, but did not threaten inmates Cannon, Jones, or Good, the other witnesses to the argument.  *Id. (*¶ 18).  Plaintiff alleges McClemore subsequently told Plaintiff that "we would all be going to the SHU."  *Id.* (¶ 17).  Plaintiff contends that these threats of placement in SHU made to other witnesses to the altercation were used by Defendant Boyd as a form of retaliation against Plaintiff.  ECF No. 10 at 8, 11 (¶¶ 21, 36).

Plaintiff also claims that the black inmates who witnessed the argument were threatened with SHU, but not the white witnesses.  ECF No. 10 at 8 (¶ 18).  She also claims that her constitutional right to Equal Protection was violated because the staff in the RDAP at FCI-Tallahassee treated black inmates better than white inmates.  ECF No. 10 at 9-12 (¶¶ 22-32).

## Defendants' Motion to Dismiss

On December 26, 2017, Defendants filed their motion to dismiss the Second Amended Complaint.  ECF No. 27.  As grounds, Defendants contend that Plaintiff failed to exhaust administrative remedies; that Plaintiff failed to establish a First Amendment retaliation claim and that Defendants violated a clearly established right; that Defendants are entitled to Qualified Immunity; and that a <u>Bivens</u> suit is not the proper remedy.  ECF No. 27.

A. <u>Legal Standards</u>

Federal Rule of Civil Procedure 8(a) governs pleading requirements for complaints and demands a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has interpreted this language as requiring the complaint to "raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). This requires "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. This plausibility pleading obligation demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted); *see also* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are ' "merely consistent with" ' a defendant's liability fall short of being facially plausible." (quoting <u>Twombly</u>, 550 U.S. at 557)). Instead, the complaint must contain enough factual allegations as to the material elements of each claim to raise the plausible inference that those elements

are satisfied, or, in layman's terms, that the plaintiff has suffered a redressable harm for which the defendant may be liable.

If the defendant does not believe the allegations show the plaintiff is legally "entitled to relief," it may move to dismiss the case under Federal Rule of Civil Procedure 12.  In evaluating a Rule 12 motion to dismiss, the Court must accept as true all factual allegations in the complaint and "construe them in the light most favorable to the plaintiff."  Baloco ex rel. Tapia v. Drummond Co., 640 F.3d 1338, 1345 (11th Cir. 2011); Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994).  However, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth."  Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011).

A complaint, or any claim therein, will be dismissed if it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570; Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's " 'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.' " (quoting Iqbal, 556 U.S. at 679)).

A pleading drafted by a party proceeding pro se is held to a less stringent standard than one drafted by an attorney, and will be liberally construed. <u>Jones v. Fla. Parole Comm'n</u>, 787 F.3d 1105, 1107 (11th Cir. 2015). Even so, "a pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." *Id.*

## B. Failure to Exhaust Administrative Remedies

Defendants first contend that the Second Amended Complaint should be dismissed for Plaintiff's failure to exhaust administrative remedies. ECF No. 27 at 4. The PLRA is applicable whether a prisoner is in state or federal custody. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325 (11th Cir. 1998) (holding that the exhaustion requirement of § 1997e(a) of the PLRA now applies to both federal and state prisoners.). Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and

whether they seek only monetary damages.  Porter v. Nussle, 534 U.S. 516, 524 (2002); Woodford v. Ngo, 548 U.S. 81, 85 (2006).  The exhaustion requirement applies to Bivens actions.  Alexander, 159 F.3d at 328 (holding that prisoner asserting Bivens claim must exhaust available administrative remedies).

Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  Booth v. Churner, 532 U.S. 731, 738-39 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); *see also* Porter, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

"[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93 (emphasis added).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91 (bracketed material added).

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving.  *See* Jones v. Bock, 549 U.S. 199, 216 (2007) (stating, "We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints").

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps.  Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).  First, the Court looks to the factual allegations in the Defendants' motion, and those in the Plaintiff's response, if any.  *Id.*  If they conflict, the Court accepts the Plaintiff's version as true.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.; see also* Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008).  If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082.  "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1377.

A prisoner must comply with the process set forth and established grievance procedures.  See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  The BOP provides an Administrative Remedy Program ("ARP") to all inmates housed in its facilities.  See 28 C.F.R. § 542.10-19.  Under the ARP, a prisoner must first present an issue of concern informally to staff at her institution before submitting a Request for Administrative Remedy.  See 28 C.F.R. § 542.13.  If the issue is not resolved to the inmate's satisfaction, she may submit a formal written Administrative Remedy Request ("ARR"), on the BP-9 form to the appropriate individual. See 28 C.F.R. § 542.14. The deadline for completion of informal resolution and submission of a formal ARR is 20 calendar days following the date on which the basis for the ARR occurred.  Id.  If the inmate is not satisfied with the warden's response to her ARR, the inmate may submit an appeal on the BP-10 form to the appropriate Regional Director within 20 days from the date of the response to the ARR.  See 28 C.F.R. § 524.15.  If the inmate is not satisfied with the response from the Regional Director, she may submit an appeal on the BP-11 form to the General Counsel in the Central Office within 30 calendar days of the date the Regional Director signed the response to the Appeal.  See 28 C.F.R. § 542.15.

Defendants assert in the motion to dismiss that at no time since Plaintiff arrived at FCI-Tallahassee has she filed any administrative remedy regarding the allegations raised in the Second Amended Complaint. ECF No. 27 at 7. Defendants assert that Plaintiff never filed any grievance on April 17, 2017, or any grievance concerning her claim of retaliation. *Id.* Defendants attach a Declaration by Glenda Dykes, Legal Instruments Examiner, Southeast Regional Office, Federal Bureau of Prisons, who states that she is the Administrative Remedy Clerk for the Southeast Region. ECF No. 27-1. Dykes states that Plaintiff submitted no administrative remedy between February 2017 and November 2017. *Id.* The Declaration details the administrative remedies that were filed before and after that period. It does not indicate the specific subject matter of the administrative remedies, but does indicate that none would have applied to or been timely *vis a vis* the incidents alleged in the Second Amended Complaint. *See Id.* at 2-3.

In response to the motion to dismiss for failure to exhaust, Plaintiff contends that administrative remedies were "not available, and became unavailable," at the time Plaintiff alleges she filed her BP-8½, and that her BP-8½ "was not filed into Sentry." ECF No. 32 at 2, 7. Plaintiff contends that BP-8½ forms "are not logged or documented into Sentry." *Id.* She

further contends that once the commissary restriction was placed on her, any further administrative remedy became unavailable. *Id.* at 4. Even so, Plaintiff alleges in her Second Amended Complaint that she did submit a BP-9 administrative remedy with a counselor on April 13, 2017, after the commissary restriction was imposed. ECF No. 10 at 6 (¶ 7). She does not allege that she filed any appeal from her alleged grievance, but contends in her response that a BP-10 Appeal would not have been appropriate because those appeals are only allowed in this region for sensitive issues, which in practice means medical issues. ECF No. 32 at 5.

Plaintiff does not offer any explanation of why prison records would not show her submission of a BP-9 form on April 13, 2017, as alleged in her Second Amended Complaint, other than to suggest that the counselor failed to file it, thus precluding any further steps by her in the administrative process. ECF No. 32 at 5-6. She does not allege that she obtained a receipt for either the form BP-8½ or the form BP-9 submission. Title 28 C.F.R. § 542.11 provides that, upon submission of an administrative remedy request, a receipt acknowledging such request should be returned to the inmate. Plaintiff does not allege she was offered a receipt for either

form or that she requested a receipt, or that she received a written response to either complaint.[2]

Plaintiff also suggests that her email to the warden on April 10, 2017, prior to the date she alleges she submitted her BP-8½, constituted a proper step in the required administrative exhaustion, and that it proved any further administrative remedies were "unavailable." The email, a copy of which is attached to the Second Amended Complaint, ECF No. 10 at 15, states Plaintiff was "wondering how the BOP developed the recommendation for halfway house" to which the warden's secretary allegedly responded that the email was "noted." *See* ECF No. 32 at 5. The email pertained to the halfway house issue, and occurred before any grievance was filed and before the commissary restriction was placed on Plaintiff.[3] Contrary to the allegation that administrative remedies became unavailable, Plaintiff alleges that she did submit two administrative

---

[2] The Administrative Remedy Program set forth in 20 C.F.R. Part 542 specifically addresses situations in which a grievant receives no response within the statutory period. *See* 28 C.F.R. § 542.18 (allowing inmates to "consider the absence of a response to be a denial at that level" if the allotted time expires). Thus, any attempt to excuse failure to exhaust by arguing that the inmate could not be expected to pursue this issue administratively given the lack of response is unavailing.

[3] It is alleged that the form BP-8½ complaint pertained to Plaintiff's disagreement with Thomas's position on the duration of Plaintiff's halfway house assignment, but the form BP-9 that Plaintiff alleges she submitted pertained to the imposition of a commissary restriction. There is no allegation in the Second Amended Complaint, attached documents, or the response to the motion to dismiss that Plaintiff exhausted an administrative remedy pertaining directly to the halfway house assignment dispute.

remedies after that email, which conflicts with her contention that the warden's alleged response to her email proves that administrative remedies were unavailable.

Although "a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable,' and thus lift the exhaustion requirement," Plaintiff must show that the threats actually occurred and that the threat is one that would deter a reasonable inmate. <u>Turner</u>, 541 F.3d at 1085. Plaintiff alleges no facts to support her conclusory argument that threats of retaliation prevented her from submitting a grievance form BP-9 or from completing any of the other required steps in the administrative process. In fact, she alleges that once the BP-9 form was submitted to the counselor, her commissary restriction was almost immediately lifted. ECF No. 10 at 6 (¶ 7).

Nor does Plaintiff allege facts showing that the administrative remedy forms were withheld from her. She states in one part of her response that "there is no directive or option on redressing an issue when staff refuse to provide a BP-9," implying that staff refused to provide a BP-9 form. ECF No. 32 at 4. However, Plaintiff does not identify any person who refused to provide her with a BP-9 form. Plaintiff also contends that a

BP-9 form would not have been provided to her unless her BP-8½ informal complaint had been processed, and that she did file the BP-9 form. ECF No. 32 at 4; ECF No. 10 at 6 (¶ 7). Thus, Plaintiff variously contends that she had no administrative remedy after her email to the warden, that she had no administrative remedy after filing the BP-8½ form, that she did submit a BP-9 form that resulted in lifting of the commissary restriction, and that the administrative process was rendered unavailable to her because after her initial complaint, the applicable grievance procedures were so opaque and confusing that there were practically incapable of use, as occurred in <u>Williams v. Priatno</u>, 829 F.3d 118 (2d Cir. 2016).[4] ECF No. 32 at 4-5. She concludes her response to the motion to dismiss with the request to the Court to find that administrative remedies were unavailable to her. ECF No. 32 at 6.

The Defendants have provided a Declaration of the Legal Instruments Examiner, who is also the Administrative Remedy Clerk for the Southeast Region. ECF No. 27-1. The Declaration states that Plaintiff did not file the administrative remedies as she alleged or any other administrative

---

[4] In <u>Williams</u>, the Court found that the prison grievance system, although "on the books," made it impossible in practice for him to determine what steps he must take to exhaust his remedies. *See* <u>Williams</u>, 829 F.3d at 124. That is not the case in the administrative remedy system applicable to Plaintiff in this case.

Case No. 4:17cv196-MW/CAS

remedies during the pertinent time period.  Plaintiff was apprised of the Defendants' basis for the motion to dismiss and the attestation that the records show no grievances pertaining to the allegations of the Second Amended Complaint were filed.  In response, Plaintiff makes contrary and confusing assertions concerning whether she exhausted administrative remedies, contending both that administrative remedies were unavailable to her and that she did file forms BP-8½ and BP-9.  She alleged in her Second Amended Complaint that she obtained and filed both informal and formal grievance forms.[5]

Plaintiff's confusing, internally contradictory, and conclusory assertions regarding her administrative remedies are insufficient to rebut the evidence of the Defendants that she did not complete the required steps in the BOP administrative grievance process.  Her assertions in response to the motion to dismiss do not support her contention that administrative remedies became unavailable to her due to threats of retaliation.  "Plaintiff has not shown with sufficient evidence that administrative remedies were "not available" pursuant to Ross v. Blake,

---

[5] It should be noted that even under Plaintiff's allegations, no one distinct grievance made its way through the administrative process.  Her alleged informal grievance concerned Thomas's statements and actions pertaining to Plaintiff's halfway house assignment.  The alleged BP-9 grievance appears to have concerned imposition of a commissary restriction.  She never alleged or came forward with evidence showing that she filed an appeal on a BP-10 form.

Case No. 4:17cv196-MW/CAS

136 S. Ct. 1850, 1855 (2016)." Smith v. Vann, No. 4:15cv53-RH/CAS, 2018 WL 1551907, at *8 (N.D. Fla. Feb. 21, 2018), report and recommendation adopted sub nom. Smith v. Van, No. 4:15cv53-RH/CAS, 2018 WL 1542386 (N.D. Fla. Mar. 28, 2018).  Plaintiff has not demonstrated by factual allegations that she "actually was deterred from filing grievances concerning the . . . incidents about which [s]he complains." Maldonado v. Unnamed Defendant, 648 F. App'x 939, 952 (11th Cir.), cert. denied sub nom. Maldonado v. Jefferson, 137 S. Ct. 512, 196 L. Ed. 2d 419 (2016) (citing Turner, 541 F.3d at 1084-85).  Even accepting her contention that she filed a BP-9 grievance, she does not allege filing a BP-10 or BP-11, required steps in the grievance process.  *See* 28 C.F.R. § 542.15.  As noted earlier, the Court looks to the factual allegations in the Defendants' motion and in the Plaintiff's response, and accepts the Plaintiff's view of the facts as true.  Turner, 541 F.3d at 1082.  If the facts as stated by the Plaintiff show a failure to exhaust, as they do in this case, the Court should dismiss for failure to exhaust administrative remedies.  *Id.*; *see also* Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015).

Accordingly, it is recommended that the Court find Defendants have carried their burden of proving that Plaintiff failed to exhaust her available administrative remedies, and that the claim of violation of her First

Amendment rights by retaliation should be dismissed.  Additionally, Plaintiff's claim of violation of Equal Protection should also be dismissed because Plaintiff never claims to have filed any administrative remedies pertinent to that claim.

### Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that the Defendants' motion to dismiss (ECF No. 27) be **GRANTED** and Plaintiff's Second Amended Complaint (ECF No. 10) be **DISMISSED** because Plaintiff did not exhaust administrative remedies as required by 42 U.S.C. § 1997(e); and the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this case was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[6]

**IN CHAMBERS** at Tallahassee, Florida on June 19, 2018.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] Jones v. Bock held that exhaustion was not a pleading requirement but an affirmative defense and "noted, that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."  549 U.S. at 216.

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).** <u>**Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.**</u> **If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**